ORIGINAL

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JUL 29 2008

LAWRENCE K. BAERMAN, CLERK

ALBANY

RICHARD MINSKY, an individual, d/b/a
SLART® ENTERPRISES,

Plaintiff

vs.

Linden Research, Inc., d/b/a Linden Lab®,
a Delaware corporation, John Doe (a/k/a
Victor Vezina), an individual,

Defendants

Civil Case No.: **08 -CV- 0819**

**LEK / DRH**

**COMPLAINT OF
TRADEMARK INFRINGEMENT
AND DILUTION, CONTRIBUTORY
INFRINGEMENT AND DILUTION,
TORTIOUS INTERFERENCE**

## JURISDICTION

1.     Jurisdiction is proper in this court because this litigation arises under federal law,

15 USC §1114 et seq., 28 USC §§ 1331, 1338 and 2201.

## PARTIES AND VENUE

2.     Plaintiff: Richard Minsky, d/b/a SLART Enterprises (hereinafter "I" or "me"), is

an individual resident of Columbia County, New York at 413 County Route 22, Hudson, NY

12534, d/b/a Slart Enterprises. I am an artist, a composer, a musician, a writer, a curator of

exhibitions, an educator, an event organizer, a scholar, and a publisher. I am recognized

internationally as a leader in the field of Book Art. Among my publications is SLART®

Magazine. My activities include the SLART Gallery, SLART Academy, and other products and

services produced under the SLART brand.

3.     Defendant: Linden Research, Inc., d/b/a Linden Lab® (hereinafter "Linden"), is a

Delaware corporation with principal offices in San Francisco, California. Their General Counsel

1

is Martin Roberts (a/k/a Marty Linden). Address: Martin Roberts, General Counsel, Linden Research, Inc., 945 Battery Street, San Francisco, CA 94111. Based on information and belief, Linden is engaged in the business of creating and providing an electronic multiplayer role-playing virtual reality entertainment platform accessible by a communications network. They purvey this platform under the name Second Life® at secondlife.com.  Second Life (hereafter SL) is advertised, distributed, and operated via the Internet to customers within the jurisdiction of this Court.

4.       Defendant:  John Doe (a/k/a Victor Vezina), is believed to be an individual. "Victor Vezina" is an "avatar" name used within the Second Life virtual world. An avatar is a character representing a "resident" in SL that is operated by a person using the SL software. The real identity of Vezina is believed to be known to Linden. Real name and address is unknown to Plaintiff. One purpose of the present action is to compel Linden to identify this Defendant.

## ALLEGATIONS

### I. General Allegations

5.       Linden entices people to join SL and start businesses that make real money. Once someone downloads the software and opens an account they become a "resident" of SL. Residents can buy and sell Linden Dollars ($L), exchanging them for real world currencies. Linden operates a currency exchange for this purpose called the Lindex™. The SL website lists many businesses that residents have started and encourages this activity. (Exhibit A, page 15).

6.       Linden claims to support Intellectual Property rights within SL.

7.       On November 19, 2006 I registered as a user of SL and chose the avatar name ArtWorld Market. I discovered that there were artists creating within this platform, artists who used the platform for social and business networking, and artists who import images of their real

2

world artworks into SL and sell copies of these images to other residents in exchange for Linden dollars (represented by the symbol L$). There were also art galleries and art museums. There were about one million registered users claimed by Linden at that time, and when I went online there would be about 7,000 residents on simultaneously, according to the statistics that Linden put on the log-in screen. SL then started growing rapidly, at the rate of about a million users a month. A year later there were about 10 million "residents" claimed, with about 35,000 on when I would log in. Now it is common to have 50,000 or more users simultaneously online.

8.   After a week or so exploring the art galleries of SL I decided to open a gallery there, reselling works that I acquired from other residents. I also decided to start a critical review of the arts and publish it as a website, as a real world book, and as a book inside SL. I thought about a name that could be used not only for the gallery and magazine, but for purposes beyond SL—for real world activities, such as a real world gallery showing traditional media, for publications that went beyond SL, for an art school, for publishing art online, for publishing musical works, and for other activities that I was thinking about, and came up with the name SLART.

9.   SLART has a great sound as a name, and is also funny, because of the several colloquial meanings it has, including a slut's fart, a fart made while sleeping, and someone who is between a slut and a tart. I searched SL using the SL search feature to see if anyone else was using it, and there were no uses found. I also searched online with Google and found no uses of SLART, other than the definitions relating to sluts and farts. I decided that SLART would be my brand name.

10.   I rented a space in SL for the SLART Gallery in a region named "Tamarack" from a group named "Skye Condos." This was a virtual building that was situated in the sky. In SL you can place things hundreds of meters in the air, and avatars can come by teleporting. I

3

have maintained at least one SLART gallery in Skye Condos continuously since then, and at one time rented five condo galleries simultaneously that were linked by teleport devices or bridges. Shortly after renting the SLART Gallery space I registered the domain name slartmagazine.com for the online publication. That was December 14, 2006. I immediately began to review art exhibitions inside SL and write editorials about the business practices of creating, producing, distributing, selling and collecting virtual art, and how this differed from the Real Life (RL) art business. In real life I have been in the art business for over 35 years, as an artist, a gallery owner, and in other roles. Articles about my work have appeared in many publications, including The New York Times, The Wall Street Journal and Money Magazine. I identified the SL gallery and the magazine with the brand SLART™, using the TM symbol to establish my claim to the trademark.

11.       This activity gained international fame almost instantly when, on January 23, 2007, the lead article in ARTNET News was about my launching SLART Magazine. ARTNET is an industry leader in fine art business information.  I was contacted for interviews by journalists in the USA and abroad.  There soon were articles about SLART Magazine in publications around the world.

12.       On March 22, 2007 I filed for SLART trademark registration with the USPTO.

13.       On April 13, 2007 SLART Magazine was the subject of a half-page feature in the paper edition of Financial Times Deutschland, and also on their website. That was followed in Germany a month later by a major article on SLART Magazine in Die Zeit.  SLART Magazine became an industry leader on art in Second Life.

14.       On May 11, 2007 I was interviewed in New York City at the facilities of WNYC for the Public Radio International program Studio 360. A few days later, on May 16, I presented

4

a SLART Tour of the Second Life Art World at Location One, an art center in Manhattan's SOHO art district. This was an event in which my computer screen of SL was projected onto a large screen to a full house. I showed the real art world audience, most of whom had never seen SL, some examples of what the SL artists were doing. Simultaneously, a video feed of the real life (RL) presentation was streamed into SL, where a group of artists' avatars had gathered around a video screen in a region in SL owned by the New Media Consortium, a not-for-profit association of major institutions that is exploring the uses of SL for educational, cultural, and other purposes. This may have been the first event of its kind, in which the audience in RL and the artists in SL could see each other, and interact through streaming video. The artists in SL could tell the RL audience about their work and answer questions from the audience.

15.    On July 5, 2007 an Office Action was issued by the USPTO on the SLART trademark application with two items: One was a statement that they found no similar registered or pending mark which would bar registration. The other was a descriptive refusal, accompanied by 34 examples from the Internet, and saying that "the proposed mark merely describes the feature of applicant's services," and, "The term "SLART" is commonly used to describe art within the online world Second Life."

16.    I responded on July 12, pointing out that none of the 34 examples included the term SLART. All used the descriptive phrase SL Art, which is in common use to describe art in SL, because it is an abbreviation of Second Life Art, and is pronounced "ess ell art." That is not the same as "slart," which sounds distinctly different. I stated that I do not consider SL Art to be an infringement of the SLART trademark. I further provided the USPTO with copied text and screen shots of an online dictionary that had five definitions of slart with connotations of farts, sluts, etc. I also pointed out, not without humor, that those interpretations of SLART did not

signify the feature of a service, except perhaps in the sense of services within those meanings, which are not in my Classes of Goods & Services.

17.     The USPTO ruled in my favor, that the SLART mark is distinctive from SL Art and not merely descriptive, and on August 29 issued a Notice of Publication. The SLART mark was published for opposition on September 18, 2007. There was no opposition, and Registration Certificate 3399258 was awarded March 18, 2008 for the standard character mark SLART (Exhibit B, page 16).

18.     On August 25, 2007 I presented a paper on The Art World Market of Second Life as a session in the Business Track at the Second Life Community Conference (SLCC) held at the Chicago Hilton. It was considered a popular presentation and since then over 11,000 copies of the paper have been downloaded from the SLART website.

19.     In November, 2007 I issued the first SLART Monograph in two archival paper editions, a limited edition softcover book and a Deluxe hardcover edition. Copies were purchased by such prestigious institutions as Stanford and Yale Universities, and The Morgan Library and Museum.

20.     Subsequently I changed the SLART Magazine motto from "a critical review and journal of the arts in Second Life" to "a critical review and journal of the virtual arts." More recently it changed to "a critical review of virtual business and culture," reflecting the evolving direction of the publication and the emergence of other virtual worlds. The other worlds do not as yet have the capabilities for artists that SL has, but there are systems in development that should provide opportunities for artists and related businesses in the near future. There are also web-based 3-D internet applications being developed that are not "virtual worlds." I am now

researching them for an article.

## II. The Present Complaint

21.      In March, 2008 I discovered through the SL search feature that an avatar named Victor Vezina was using the name "SLART Garden" for an art gallery and "SLartists of Second Life" as the name of a Group. A Group enables two or more residents to jointly own property, communicate by a different method called "Group Notices," and send Instant Messages (IM's) to the group.

22.      I contacted an attorney who operates a non-profit legal service inside second life using the avatar name Juris Amat. The service is named Virtual Intellectual Property Organization (VIPO). In RL her name is Tamiko Franklin, and she lives in Croatia. She is American with a JD and is a member of the Massachusetts Bar. On March 16 Ms. Franklin sent Vezina a cease and desist (c&d) notice by Instant Message (IM). Vezina did not respond. Not knowing who Vezina is in RL, we had no way of serving a paper notice.

23.      On April 22 I wrote to Martin Roberts, Linden's General Counsel, asking them to notify Vezina to cease and desist from the unauthorized use of "SLART" in Second Life, and to follow through with appropriate remedies if there was no compliance. This was sent U.S. Priority Mail, and was received April 24.  I received no response from Mr. Roberts and Vezina's infringing use remained in Second Life.

24.      I asked Ms. Franklin to find out what happened. She called Mr. Roberts' office on May 13. On May 23 she received an e-mail response from an attorney in Mr. Roberts' office named Laura Pirri. That day I searched for SLart Garden in SL and could not find it. I thought that meant Linden had acted on my request.

25.     Ms. Pirri and Ms. Franklin spoke by telephone on May 28. Ms. Franklin e-mailed me and said that Ms. Pirri indicated that Linden was not responsible for the disappearance of SLart Garden and that Linden will not remove the infringing material. Ms. Pirri also told Ms. Franklin that Linden wanted me to abandon the SLART mark before the USPTO, to stop approaching other residents regarding their unauthorized use of the mark, and to comply with the terms of use of the SL license. In a follow up e-mail on May 29, Ms. Pirri wrote: "Richard Minsky is welcome to take advantage of this license, for example, he could use "SL Art Magazine" under the license. "

26.     Since SLart Garden had disappeared I no longer had cause to pursue the matter with Linden, and told that to Ms. Franklin. I thought the other part of Ms. Pirri's demands were ridiculous and did not address them. I had no intention of abandoning my Federal Trademark and licensing theirs instead. Besides the fact that I own the SLART trademark and would not want to use a licensed mark, the name "SL Art Magazine" is not distinctive the way SLART is, does not sound as good, doesn't have the multiple meanings that SLART has, and would limit the content to art in SL. And I would not stop approaching other residents who infringe my mark. That is absurd. I have to protect my mark.

27.     On May 29 Ms. Franklin wrote to Ms. Pirri saying "... he [Minsky] has informed me that he will no longer pursue action concerning the matter contained in his letter to Mr. Roberts as the cause for his concern no longer exists. "

28.     Ms. Pirri replied on June 2:

> "And did you confirm that he'll abandon the SLArt registration with the USPTO? And that he'll stop his demands that other Residents not use SLArt? Please confirm that. It's important that he understand that he doesn't have the right to a mark that contains our mark, and that he doesn't have the right to demand that other Residents not make nominative fair use of SLArt."

8

29.   On June 3 Ms. Franklin replied to Ms. Pirri:

"As Mr. Minsky's legal representative, I'm not in a position to advise him to abandon his trademark when there are absolutely no legal grounds for doing so. Perhaps you can tell me... why is abandoning the registration in his legal interest?
      Our position is this, the question of whether SLART and SL Art are the same has already been decided in favor of Mr. Minsky. SLART is a registered trademark and we reject assertions based on there being no legal difference between it and the term SL Art. Consequently, it is in the interest of Linden Research, Inc. that its employees, agents, representatives and other responsible persons do not support or condone infringing uses of the SLART trademark, either directly or indirectly.
      Mr. Minsky is a trademark owner and as such will continue to enforce his right against infringing uses of his trademark and (yes) infringing uses include those which 1) advertise products or services that may easily be identified by the use of non-infringing terms (such as SL Art or SL Artists) or 2) may be construed as suggesting his sponsorship or endorsement.

30.   Ms. Pirri wrote back a long rambling letter continuing to claim SL Art and Slart were the same, that it was descriptive, that I must abandon my trademark and that I must license their trademark. She wrote "We don't recognize Richard's trademark claim to "SLArt," nor will we prevent others from making nominative fair use of our trademarks to describe art in Second Life."

31.   On July 11 I again searched for SLart Garden and this time I found it. I could not tell whether it had gone and come back, or had not showed up for a time in Search because of defects in the SL search process or other malfunctions in the SL system. SL is in constant development, with server software and viewing software being changed frequently, many bugs, crashes, disappearing inventory, disappearing objects, disappearing places, maps not working, teleports not working, and other malfunctions. Vezina had changed and expanded SLart Garden. Instead of saying SLart Garden, his gallery now had big signs that said SLART. I filed an abuse report immediately, which is the procedure you follow in SL when there is an issue with another resident. I also saved snapshots on my computer (Exhibit B, pp. 17-18). The report was filed

9

inside the SL world from the offending location. The system automatically notes the precise location of your avatar when the report is filed, and it included a snapshot of the scene I saw there, with the infringing SLART sign. I received e-mail confirmation of the abuse report. This is the text of the report I filed:

> I am the owner of the standard character trademark SLART (USPTO Reg.
> No. 3399258). I also own the SLART GALLERY. This gallery is infringing
> on the trademark. The TOS assures me of protection for my Intellectual
> Property. In addition to using a large logo that says SLART on the gallery, there is
> also a sign that says SLART SQUARE, and the land is named "SLart Garden
> TEDONG SIM!" These are all in violation.

32.     On July 16 Ms. Pirri wrote to Ms. Franklin asking if we could schedule a phone call. On July 17 I participated in a three-way phone call with Ms. Pirri and Ms. Franklin. It was a disappointing phone call. Ms. Pirri spent a lot of time pressing me for details of my business plan, which is proprietary information, and reiterated that Linden will not recognize the SLART trademark. She tried to entice me to abandon my mark by saying that Linden would like to feature me on their website but will not unless I abandon my mark.

33.     Linden owns the infringing material. The SL Terms of Service (TOS) section 3.3 states:

> "Linden Lab retains ownership of the account and related data, regardless of
> intellectual property rights you may have in content you create or otherwise own.
>       You agree that even though you may retain certain copyright or other
> intellectual property rights with respect to Content you create while using the Service,
> you do not own the account you use to access the Service, nor do you own any data
> Linden Lab stores on Linden Lab servers (including without limitation any data
> representing or embodying any or all of your Content). Your intellectual property
> rights do not confer any rights of access to the Service or any rights to data stored by
> or on behalf of Linden Lab."

## CLAIMS FOR RELIEF

### CLAIM ONE
**(Declaratory Judgment of Trademark Infringement and contributory infringement, 15 U.S.C. §1114 et seq.)**

34. I own a valid registered Federal Trademark awarded by the USPTO. Linden Lab wishes I didn't have it. If Linden doesn't think I should have the mark they can go to the USPTO and try to get it reversed, which Laura Pirri threatened to do if I do not abandon it, as part of her intimidation and harassment. The SLART trademark has already been minutely examined by the USPTO about the very issues Linden is bringing up to delay their removal of the infringing material. The USPTO ruled that it did not infringe on any mark, that it is distinct from SL Art, and that it is not merely descriptive. Linden stands to make economic gain from the fame and goodwill that the SLART brand has acquired, by the assertion that they own the SLART mark, and are trying to weaken and dilute it in their self-interest. I believe the SLART mark will withstand any challenge, and as long as I have it there is a presumption that it is a valid trademark. Even if they do go to the USPTO to try and get it overturned, they should not be allowed to use that tactic to further infringe, weaken and dilute the mark, unless and until the mark is overturned, which I believe will be never. The USPTO did not make a mistake.

35. Linden would not notify Vezina of the violation, nor remove the offending material, nor sanction Vezina for the violation, nor admit it is a violation, even after notification. That is contributory trademark infringement.

36. Linden owns the infringing material. Linden chose to keep the infringing material up after they were notified it was infringing. That is trademark infringement.

37. Plaintiff seeks declaratory judgment from this court that Linden's continued unauthorized display of the SLART trademark in the Second Life virtual world constitutes

trademark infringement and dilution, and contributory trademark infringement and dilution.

## CLAIM TWO

38.     John Doe (a/k/a Victor Vezina) is supposedly the creator of the infringing SLART sign and gallery in Second Life. I don't know if Vezina is an individual, a corporation, a partnership, or if Vezina really exists outside of the Linden computer. Whatever Vezina is, the person or persons operating that account in Second Life are infringing on the SLART trademark.

39.     Plaintiff seeks declaratory judgment from this court that the uses of the term SLART by John Doe (a/k/a Victor Vezina) as described in ¶ ¶ 21, 31 and Exhibit B constitute trademark infringement and dilution.

## CLAIM THREE

40.     Plaintiff incorporates by reference the allegations contained in paragraph 34.

41.     Every day that Linden is allowed to infringe on the SLART mark and assist others in infringing on it inures to their benefit and causes irreparable harm to the plaintiff. Linden is trying to intimidate me into abandoning a valid Federal trademark in order to illegally expand their reach. The delay they have already caused by refusing for months to stop the infringement of the SLART trademark in Second Life has been a huge burden.  It is essential that they not be allowed to succeed in their plan. Their action makes it very difficult, if not impossible, to raise the venture capital needed to expand my business in a timely way to take advantage of the fame the SLART mark has acquired.

42.     Linden has not only refused to remove the infringing material; they have refused to provide the identity of the person whom I believed created the infringing material. That person is the resident of SL who uses the name Victor Vezina.  They are hiding that individual from

prosecution. That makes it impossible to serve court papers on that person, if they actually exist. It is also possible that Victor Vezina is not a real person, and that Linden does not provide an identity because Linden created that identity as a pseudonym for their own activities.

43.     Plaintiff seeks judgment from this court that Linden has engaged in Tortious Interference.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff respectfully requests that this Court grant the following relief:

44.     Enter judgment according to the declaratory relief sought;

45.     Order Linden and Vezina to cease and desist use of the SLART mark; and further order Linden to remove infringement of the SLART mark by others who are its "residents" and provide real life information to me on identities and locations of infringing "residents" if and when such are discovered.

46.     Award plaintiff his costs in this action;

47.     Enter such other further relief to which plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

13

I declare under penalty of perjury that the foregoing is true and correct.

DATED: July 29, 2008

Signature of Plaintiff

EXHIBIT A

Photo of the Second Life website page enticing people to make "part or all of their real life living" from businesses inside SL.



EXHIBIT B

The SLART USPTO Registration

Int. Cl.: 41

Prior U.S. Cls.: 100, 101, and 107

## United States Patent and Trademark Office

Reg. No. 3,399,258
Registered Mar. 18, 2008

### SERVICE MARK
### PRINCIPAL REGISTER

# SLART

MINSKY, RICHARD P. (UNITED STATES INDI-
VIDUAL)
413 COUNTY ROUTE 22
HUDSON, NY 12534

FOR: MULTIMEDIA PUBLISHING OF BOOKS,
MAGAZINES, JOURNALS, SOFTWARE, GAMES,
MUSIC, AND ELECTRONIC PUBLICATIONS; ON-
LINE PUBLICATION OF ART; PUBLICATION OF
ELECTRONIC MAGAZINES; PUBLICATION OF
ELECTRONIC NEWSPAPERS ACCESSIBLE VIA A
GLOBAL COMPUTER NETWORK; PUBLICATION
OF THE EDITORIAL CONTENT OF SITES ACCES-
SIBLE VIA A GLOBAL COMPUTER NETWORK;
PUBLISHING OF ELECTRONIC PUBLICATIONS;
ART EXHIBITIONS; CONDUCTING WORKSHOPS
AND SEMINARS IN ART; INSTRUCTION IN THE
FIELD OF ART; WORKSHOPS AND SEMINARS IN
THE FIELD OF ART; PUBLICATION AND EDITING
OF PRINTED MATTER; PUBLICATION OF BOOKS;
PUBLICATION OF BOOKS, MAGAZINES, ALMA-
NACS AND JOURNALS; PUBLICATION OF BOOKS,
OF MAGAZINES, OF JOURNALS, OF NEWSPA-
PERS, OF PERIODICALS, OF CATALOGS, OF BRO-
CHURES; PUBLICATION OF BOOKS, REVIEWS;
PUBLICATION OF BROCHURES; PUBLICATION
OF DOCUMENTS IN THE FIELD OF TRAINING,
SCIENCE, PUBLIC LAW AND SOCIAL AFFAIRS;
PUBLICATION OF JOURNALS; PUBLICATION OF
LEAFLETS; PUBLICATION OF MAGAZINES; PUB-
LICATION OF MANUALS; PUBLICATION OF MU-
SICAL TEXTS; PUBLICATION OF PRINTED
MATTER; PUBLICATION OF TEXT BOOKS; PUB-
LICATION OF TEXTS, BOOKS, JOURNALS, PUBLI-
CATION OF TEXTS, BOOKS, MAGAZINES AND
OTHER PRINTED MATTER; EDUCATION IN THE
FIELD OF ART RENDERED THROUGH CORRE-
SPONDENCE COURSES; EDUCATION IN THE
FIELD OF ART RENDERED THROUGH VIDEO
CONFERENCE; EDUCATIONAL SERVICES IN THE
NATURE OF ART SCHOOLS; ORGANIZING COM-
MUNITY FESTIVALS FEATURING A VARIETY OF
ACTIVITIES, NAMELY, SPORTING EVENTS, ART
EXHIBITIONS, FLEA MARKETS, ETHNIC DANCES
AND THE LIKE, IN CLASS 41 (U.S. CLS. 100, 101
AND 107).

FIRST USE 12-9-2006; IN COMMERCE 12-14-2006.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SN 77-137,283, FILED 3-22-2007.

KATHLEEN LORENZO, EXAMINING ATTORNEY

EXHIBIT C

3 Photos of Slart Garden in Second Life, owned by SL resident "Victor Vezina"



1. Above: the art gallery there is identified by the name SLART.



2. Above: view of the other side of the same wall as shown in picture 1.

17



3. The same area from a viewpoint further back, to include the sign that says SLart square.