**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD MINSKY, AN INDIVIDUAL, D/B/A SLART ENTERPRISES,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>LINDEN RESEARCH, INC., d/b/a LINDEN LAB, a Delaware corporation, JOHN DOE (a/k/a VICTOR VEZINA), an individual, PHILIP ROSEDALE, an individual, MITCHELL KAPOR, an individual, other DOES, presently unknown to Plaintiff,<br><br>                                        Defendants. | **08 - CV - 0819**<br><br>**LEK-DRH**<br><br>**ANSWER OF DEFENDANT LINDEN RESEARCH, INC. AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

## ANSWER TO COMPLAINT

Linden Research, Inc. ("Linden") hereby responds to the Complaint of Richard Minsky, d/b/a SLART Enterprises, ("Plaintiff") as follows:

### JURISDICTION

**1.**     Paragraph 1 of the Complaint states legal conclusions as to which no response is required.  To the extent a response is required, Linden admits that the Court has subject matter jurisdiction over the Plaintiff's claims.

### PARTIES AND VENUE

**2.**     Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and on that basis denies the allegations therein.

**3.**     Linden admits the allegations of the first two sentences of Paragraph 3.  Linden further admits that it operates a three-dimensional online virtual world known as "Second Life," which users access via the Internet through viewer software downloaded from the Second Life website at http://secondlife.com/.  Except as expressly admitted, Linden denies the allegations in Paragraph 3.

**4.** Answering Paragraph 4, Linden admits that an avatar is a user's persona in the Second Life virtual world. Linden further admits that "Victor Vezina" is an avatar name used in the Second Life virtual world and that the user associated with the avatar name "Victor Vezina" has registered with Linden and provided contact information to Linden. Except as expressly admitted, Linden is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and on that basis denies the allegations therein.

**5.** Linden admits the allegations of Paragraphs 5 and 6.

**6.** Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, and on that basis denies the allegations therein.

## ALLEGATIONS

**7.** Answering Paragraph 8, Linden admits that users who successfully register with Linden to use the Second Life service are known as "residents" of Second Life, that users may buy and sell Linden Dollars, that it operates a currency exchange known as the LindeX, and that the Second Life website lists businesses begun by users. The remaining allegations of Paragraph 8 are vague and as a result Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and on that basis denies the allegations therein.

**8.** Answering Paragraph 9, Linden admits that Second Life users retain certain copyright and other intellectual property rights associated with the content they have created in Second Life to the extent that the user has such rights under applicable law and the Second Life Terms of Service. The remaining allegations of Paragraph 9 are vague and as a result Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and on that basis denies the allegations therein.

9.      Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 10 through 14, and on that basis denies the allegations therein and further denies that Plaintiff has created or acquired any valid trademark rights in SLART.

10.     Answering Paragraph 15, Linden avers that the records of the United States Patent and Trademark Office speak for themselves and otherwise Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and on that basis denies the allegations therein.

11.     Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 16 through 17, and on that basis denies the allegations therein.

12.     Answering Paragraphs 18, 19 and 20,  Linden avers that the records of the United States Patent and Trademark Office speak for themselves and otherwise Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, 19 and 20 and on that basis denies the allegations therein.

13.     Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 21 through 23, and on that basis denies the allegations therein.

14.     Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and on that basis denies the allegations therein, except that Linden admits that Second Life users may jointly own property as members of a Group and that users in Groups may communicate through Instant Messages and Group Notices.

15.     Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and on that basis denies the allegations therein.

16.     Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and on that basis denies the allegations therein except that Linden admits that Martin Roberts is Linden's General Counsel and that on April 24 Linden received a written request from Plaintiff, which request speaks for itself, and Linden denies that Plaintiff has a valid federal registration for SLART or any enforceable rights in SLART.

17.     Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and on that basis denies the allegations except that Linden admits that Laura Pirri is counsel for Linden and sent an email to Tamiko Franklin on May 23, 2008.

18.     Answering Paragraph 28, Linden admits that, on May 28, 2008, Laura Pirri spoke on the telephone with a person identifying herself as Tamiko Franklin, that Ms. Pirri wrote an email to Ms. Franklin on May 28, which email speaks for itself, that Linden's Second Life Brand Center policies were issued on March 24, 2008, and that Linden disputes that Plaintiff owns a valid federal registration for SLART or any enforceable rights in SLART.   Except as expressly admitted, Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and on that basis denies the allegations therein.

19.     Answering paragraph 29, Linden avers that the terms of the Second Life Brand Center speak for themselves.  Except as expressly so averred, Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, and on that basis denies the allegations therein.

20.     Answering Paragraphs 30 through 32, Linden avers that Ms. Pirri and Ms. Franklin corresponded by email on May 29, May 30, and June 2, which correspondence speaks for itself.  Except as expressly so admitted, Linden is without knowledge or information sufficient to form a belief or to the truth of the allegations in Paragraph 30 through 32 and on that basis denies the allegations therein.

21.     Linden denies the allegations in Paragraph 33, except that Linden admits that Laura Pirri authored an email which speaks for itself and that Linden disputes that Plaintiff owns a valid federal registration for SLART or has any enforceable rights in SLART.

22.     Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, and on that basis denies the allegations therein, except admits that Plaintiff filed a report with Linden which speaks for itself.

23.     Linden denies the allegations in Paragraph 35, except that Linden admits that Laura Pirri wrote an email to Tamiko Franklin on July 14, which email speaks for itself, and participated in a telephone conference with Plaintiff and a person who identified herself as Tamiko Franklin on July 17, 2008, and that Linden disputes that Plaintiff has a valid federal registration for SLART or has any enforceable rights in SLART.

24.     Answering Paragraph 36, Linden avers that use of its service is governed by the Second Life Terms of Service, which Terms of Service speak for themselves.  Except as expressly averred, Linden denies the allegations in Paragraph 36.

25.     Answering Paragraph 37, Linden admits that Plaintiff filed a complaint in this Court, Action No. 08-CV-819, on July 29, 2008 and subsequently amended that complaint, that Linden received the original complaint and a waiver of service of summons form on July 31, that Mr. Roberts, Mr. Kapor and Mr. Rosedale received an email from Plaintiff to which Mr. Roberts

replied by email on August 4 and that, on August 5, Mr. Roberts and Ms. Pirri participated in a telephone conversation with Plaintiff and someone who identified himself as John Koegel. Except as expressly so admitted, Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 and on that basis denies the allegations therein.

     **26.**     Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 38 and 39, and on that basis denies the allegations therein.

**CLAIMS FOR RELIEF**

**CLAIM ONE**

     **27.**     Linden denies the allegations in Paragraphs 40 through 48 except that Linden admits that it disputes that Plaintiff has a valid federal registration for SLART or has any enforceable rights in SLART and further admits that Plaintiff purports to seek the relief described but denies he is entitled to that relief or any relief.

**CLAIM TWO**

     **28.**     Linden states that no response is required to Paragraphs 49 through 50, because Claim Two is not addressed to Linden.  To the extent an answer is required, Linden denies the allegations in Paragraphs 49 through 50 insofar as they relate to Linden.

**CLAIM THREE**

     **29.**     Linden denies the allegations in Paragraphs 51 through 53 except that Linden admits that it disputes that Plaintiff has a valid federal registration for SLART or has any enforceable rights in SLART.

     **30.**     Answering Paragraph 54, Linden admits that Plaintiff purports to seek the relief described but denies that Plaintiff is entitled to the relief sought or any relief.

## CLAIMS FOUR AND FIVE

**31.**     Linden states that no response is required to Paragraphs 55 through 64 because Claims Four and Five are not addressed to Linden.  To the extent a response is required, Linden denies the allegations in Paragraph 55 through 64 insofar as they relate to Linden, except that Linden admits that Mssrs. Kapor, Rosedale and Kingdon have held positions with Linden, that Mssrs. Kapor and Kingdon have from time to time made public statements, which statements speak for themselves, that Linden issued a press release on November 14, 2003, which press release speaks for itself, that Linden sent an email to Tamiko Franklin, on June 9, 2008, which email speaks for itself, and that Linden disputes that Plaintiff has a valid federal registration for SLART or has any enforceable rights in SLART.

## CLAIM SIX

**32.**     Answering Paragraph 65, Linden avers that the allegations are vague and as a result Linden is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 and on that basis, denies those allegations.

**33.**     Linden denies the allegations in Paragraphs 66 through 69, except Linden admits that it disputes that Plaintiff has a valid federal registration for SLART or has any enforceable rights in SLART and further admits that Plaintiff purports to seek the relief described but denies that Plaintiff is entitled to the relief sought or any relief.

## PRAYER FOR RELIEF

**34.**     Linden states that no response is required to Paragraphs 70-75, as they contain legal conclusions and requests for relief and, to the extent a response is required, Linden denies that Plaintiff is entitled to the relief sought or any relief whatsoever.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

**35.** Linden admits that Plaintiff requested a trial by jury. Linden demands a trial by jury of all issues so triable.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

**36.** The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

**37.** Plaintiff is not the owner of any rights in SLART and the federal trademark registration for SLART issued to him was procured through fraud and misrepresentation and is invalid and unenforceable.

### Third Affirmative Defense

**38.** SLART is a combination of Linden's mark SL and the generic term "art," is confusingly similar to Linden's SECOND LIFE and SL marks, and constitutes an infringement of Linden's rights in both marks.

### Fourth Affirmative Defense

**39.** Linden cannot be subject to liability for trademark infringement or dilution because Plaintiff has not used SLART in commerce within the meaning of the Lanham Act or otherwise committed any infringement or dilution of any valid trademark rights of Plaintiff.

### Fifth Affirmative Defense

**40.** Plaintiff's claims are barred, in whole or in part, by the terms of his agreement with Linden.

### Sixth Affirmative Defense

**41.** Plaintiff's claims are barred by unclean hands.

<u>Seventh Affirmative Defense</u>

42.    Persons who make a legally permissible use of SLART are not committing trademark infringement or dilution of any valid or enforceable right of Plaintiff and therefore Linden cannot be subject to secondary liability.

<u>Eighth Affirmative Defense</u>

43.    At all relevant times, Linden acted in good faith, without actual or constructive knowledge of any infringement or dilution of any valid mark of Plaintiff, with good and sufficient legal cause and therefore cannot be subject to liability.

<u>Ninth Affirmative Defense</u>

44.    Plaintiff is not entitled to injunctive relief because any alleged injury is not immediate or irreparable and Plaintiff has an adequate remedy at law.

**COUNTERCLAIMS**

Defendant and Counterclaimant Linden Research, Inc. ("Linden"), by and through its attorneys, hereby counterclaims as follows against Richard Minsky, d/b/a SLART Enterprises ("Minsky").

**NATURE OF THE ACTION**

45.    Linden is the owner of the famous trademark SECOND LIFE for use in connection with providing online services in the nature of a multi-user, virtual environment in which users interact with each other, collaborate, create content and engage in a wide variety of business and social activities.

46.    In addition to the mark SECOND LIFE, Linden has also adopted and is using SL as a mark in connection with offering its online services.

47.    This is an action to redress violations of the federal Lanham Act for infringement of a federally registered trademark SECOND LIFE (15 U.S.C. Section 1114), unfair competition

and false designation of origin for infringement of the marks SECOND LIFE and SL (15 U.S.C.

Section 1125(a)), dilution of the federally registered trademark SECOND LIFE (15 U.S.C.

Section 1125(c)), common law trademark infringement and unfair competition and breach of

contract, all as a result of Minsky's willful adoption and use of colorable imitations of Linden's

marks, as more fully set forth hereafter.

**48.**     Linden seeks preliminary and permanent injunctive relief restraining Minsky's

infringement, a declaration that Linden is entitled to terminate Minsky's access to Linden's

online services, treble monetary damages, attorneys fees and related relief.

## THE PARTIES AND JURISDICTION

**49.**     Linden is informed, believes, and thereon alleges that Richard Minsky is an

individual and a resident of the State of New York with his principal place of business at 413

County Route 22, Hudson, New York 12543.

**50.**     Linden is a Delaware corporation with its primary place of business at 945

Battery Street, San Francisco, CA 94111.

**51.**     This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1338

and 15 U.S.C. § 1119 as the claims arise under the federal Lanham Act.  This Court has

jurisdiction over all related claims in accordance with 28 U.S.C. §§ 1338(b) and 1367(a).

## ALLEGATIONS COMMON TO ALL COUNTS

**52.**     Linden was founded in 1999 with the idea to create a new form of shared

experience on the Internet.  Bringing together substantial talent and experience in sophisticated

hardware and software technologies, Linden's founders developed the capability of offering to

users a multi-dimensional, online environment in which users could interact with each other,

create content and engage in a wide variety of activities.

53.     Publicly launched in 2003 under the brand name Second Life,  Linden's virtual world service quickly became extremely popular and rapidly garnered a large user population.

54.     Today, Second Life has more than 15 million subscribers in the United States and in sixty-six other countries around the world and it continues to grow.  In addition to offering its users the opportunity to interact and collaborate in the virtual environment, Linden's services facilitate a wide variety of business, charitable and educational activities.

55.     As the creator of one of the earliest and the most popular virtual world services, Second Life has garnered substantial publicity and acclaim.  It is featured regularly in news commentary and popular culture and has been licensed for use in several prime time television shows. *Time Magazine* recognized Second Life in its 2006 "Person of the Year" edition, which highlighted the importance of user-created content on the Internet.

56.     Since the inception of its business, Linden has continuously used the mark SECOND LIFE  to identify its online, virtual world services.  Linden has invested substantial resources in establishing its distinctive SECOND LIFE name and mark and in marketing, promoting and advertising the SECOND LIFE brand across the United States.

57.     Linden has obtained federal trademark registrations for SECOND LIFE and it owns United States Trademark Registration Nos. 2813096 and 2832935 (issued on February 10, 2004 and April 13, 2004, respectively).  True and correct copies of these certificates of registration are attached hereto as Exhibit A.

58.     As a result of Linden's consistent and widespread use of the SECOND LIFE name and mark on its services, Linden's investment of resources in the brand, its large and loyal base of users, and the substantial publicity it has garnered as an innovative and creative service,

the SECOND LIFE mark enjoys a high degree of consumer recognition and has become a famous mark.

59.     Linden enjoys substantial and valuable goodwill embodied in its SECOND LIFE mark.

60.     In addition to its SECOND LIFE mark, Linden has adopted and used the trademark SL in connection with offering its services, by, among other things, displaying the mark SL on its website and in periodicals distributed throughout the United States.

61.     In addition, Linden has adopted related marks that incorporate the SL mark.

62.     The mark SL has become widely known and associated with Linden's Second Life virtual world service and, as a result, embodies the substantial goodwill that Linden has accumulated in the marketplace in connection with offering its services.

63.     Accordingly, the SL mark is a valuable asset of Linden.

64.     Over the years, many of Linden's devoted fans who were active in Linden's Second Life virtual world have also used SL alone or in combination with generic terms to refer to Second Life in connection with their activities.  For example, Second Life residents used SL plus the generic term "art" to identify their activities concerned with the creation, display, promotion and sale of art in the Second Life environment.

65.     On or about June 5, 2007, Linden filed an application with the United States Patent and Trademark Office ("PTO") to register SL as a trademark for use in connection with providing the Second Life virtual world service.  That application, Serial No. 77198345, was examined and approved by the PTO and was published for opposition on September 16, 2008.

66.     In or about November 2006, Minsky registered as a user of Second Life and began to engage in art-related activities in the Second Life virtual world.

67.    In order to communicate to others that his activities concerned art in the Second Life environment and to benefit from the acclaim and goodwill that the Second Life virtual world enjoyed among the public and that is embodied in the SL mark, Minsky, as others had done before him, began to use in interstate commerce Linden's mark SL in combination with "art".

68.    Unlike others, however, Minsky formed the intention to usurp this combination of SL and "art" and to attempt to gain exclusive rights in it.

69.    Toward this end, on or about March 22, 2007, Minsky filed an application with the United States Patent and Trademark Office ("PTO") seeking to register SLART as a trademark in connection with his art-related activities.

70.    Minsky attached to his application an exemplar of his use of SLART reflecting the tagline, "a critical review and journal of the arts in Second Life."

71.    Minsky falsely claimed in his application that he was entitled to the exclusive use of SL plus ART and that he was not aware of others entitled to use the term in commerce.

72.    Minsky also falsely claimed that he was using SLART on a wide variety of services.

73.    The PTO initially refused Minsky's application, correctly observing that the "proposed mark merely describes the feature of applicant's services," and that "the term 'SLART' is commonly used to describe art within the online world Second Life."

74.    In an effort to overcome this refusal from the PTO, Minsky submitted a response falsely claiming that SLART as he had used it did not refer to art in Second Life but instead was a combination of terms of such as "slut" and "fart," and pointed the Examiner to an online, user-generated dictionary.

**75.**     In reliance on these false statements, the PTO issued a registration for SLART.

**76.**     Despite Linden's notice to him that it objects to his use of SLART, Minsky has persisted in using the mark, including in connection with holding himself out as an expert on the Second Life virtual world in order to promote his own commercial activities and to benefit unjustly from the acclaim and goodwill that Linden enjoys as a result of its Second Life online service, and has embarked upon a campaign of harassment and intimidation in an effort to force other users of the Second Life service to cease use of the combination of SL and "art."

**77.**     Minsky has been using Linden's SECOND LIFE and SL marks without permission and has taken advantage of Second Life's popularity to garner attention and monetary gain.

**78.**     Linden filed a petition before the Trademark Trial and Appeal Board of the PTO to cancel Minsky's registration on the grounds of fraud. That cancellation proceeding has now been stayed in favor of the action before this Court.

**FIRST COUNTERCLAIM**
**FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. SECTION 1114**

**79.**     Linden incorporates the allegations contained in paragraphs 45 to 78 of this Counterclaim as though fully set forth herein.

**80.**     The actions of Minsky described above and specifically, without limitation, Minsky's unauthorized use in interstate commerce of SLART in connection with offering his services and products constitutes infringement of Linden's SECOND LIFE mark in violation of 15 U.S.C. Section 1114.

**81.**     The actions of Minsky described above are likely to cause consumers to be confused, mistaken, or deceived into believing that Minsky's products and services are affiliated

with, associated with or sponsored by Linden, and Minsky will unjustly benefit from such association.

82.     Minsky's alleged acts of trademark infringement have been committed with the intent to cause confusion and mistake and to deceive.

83.     Minsky's actions, if not enjoined, will continue.

84.     Linden has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the SECOND LIFE mark and injury to Linden's business.

85.     Linden is therefore entitled to injunctive relief.

86.     Linden is also entitled to recover damages in an amount to be determined at trial, Minsky's profits, and the costs of this action.

87.     Linden is informed and believes, and on that basis alleges, that the actions of Minsky were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Linden to recover treble damages and reasonable attorney's fees.

## SECOND COUNTERCLAIM
## FEDERAL TRADEMARK DILUTION
## 15 U.S.C. § 1125(C)

88.     Linden incorporates the allegations contained in Paragraphs 45 to 87 of this Counterclaim as though fully set forth herein.

89.     As a result of Linden's continuous and widespread use of the SECOND LIFE name and mark on its services, Linden's investment of resources in its brand, its strong and loyal base of customers, and the publicity and acclaim that Linden has garnered in connection with its services, the SECOND LIFE mark enjoys a high degree of consumer recognition throughout the

United States and is a famous mark within the meaning of Section 43(c) of the United States

Trademark Act, 15 U.S.C. § 1125(c).

**90.**     The SECOND LIFE mark became famous before Minsky began using SLART.

**91.**     Minsky's alleged SLART mark wholly incorporates Linden's SL mark which in

turn is widely recognized in the marketplace as a designation of SECOND LIFE and Linden's

SECOND LIFE services and Minsky's use of SLART and his campaign of intimidation against

users of the Second Life service is likely to cause an association with the SECOND LIFE mark

that impairs the distinctiveness of Linden's famous SECOND LIFE mark, weakens the

connection in consumers' minds between the SECOND LIFE mark and Linden's services, and

tarnishes the SECOND LIFE mark.  Minsky's use of SLART is therefore likely to cause dilution

by blurring and tarnishment.

**92.**     The actions of Minsky described above and specifically, without limitation,

Minsky's unauthorized use in interstate commerce of a mark nearly identical in commercial

impression to Linden's famous and distinctive SECOND LIFE mark, constitutes use of a mark

that is likely to cause dilution in violation of 15 U.S.C. § 1125(c).

**93.**     The actions of Minsky, if not enjoined, will continue.  Minsky has suffered, and

continues to suffer, damages in an amount to be proven at trial consisting of, among other things,

diminution in the value of and goodwill associated with the SECOND LIFE mark and injury to

Linden's business.  Linden is therefore entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116

and 1125(c).

**94.**     On information and belief, the actions of Minsky were undertaken willfully and

with the intention of causing dilution of Linden's famous and distinctive SECOND LIFE mark,

making this an exceptional case entitling Linden to recover additional treble damages and reasonable attorneys' fees.

## THIRD COUNTERCLAIM
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. 1125(A)

95.     Linden incorporates by reference Paragraphs 45 to 94 of this Counterclaim as though fully set forth herein.

96.     The actions of Minsky described above and specifically, without limitation, Minsky's unauthorized use in commerce of SLART in connection with offering his services and products constitutes unfair competition and false designation of origin in connection with Linden's SECOND LIFE  and SL marks in violation of 15 U.S.C. Section 1125(a).

97.     The actions of Minsky described above are likely to cause consumers to be confused, mistaken, or deceived into believing that Minsky's products and services are affiliated with, associated with, or sponsored by Linden and Minsky will unjustly benefit from such association.

98.     Minsky's alleged acts of unfair competition and false designation of origin have been committed with the intent to cause confusion and mistake and to deceive.

99.     Minsky's actions, if not enjoined, will continue.  Linden has suffered, and continues to suffer, damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the SECOND LIFE and SL marks and injury to Linden's business.

100.    Linden is therefore entitled to injunctive relief.

101.    Linden is also entitled to recover damages in an amount to be determined at trial, Minsky's profits, and the costs of this action.

**102.**     Linden is informed and believes, and on that basis alleges, that the actions of Minsky were undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Linden to recover treble damages and reasonable attorney's fees.

**FOURTH COUNTERCLAIM**
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

**103.**     Linden incorporates by reference Paragraphs 45 to 102 of this Counterclaim as though fully set forth herein.

**104.**     The actions of Minsky described above and specifically, without limitation, Minsky's unauthorized use in commerce of SLART in connection with offering his services and products constitutes trademark infringement of Linden's SECOND LIFE and SL marks and unfair competition and misappropriation in violation of the common law of the State of New York.

**105.**     The actions of Minsky described above are likely to cause consumers to be confused, mistaken, or deceived into believing that Minsky's products and services are affiliated with, associated with, or sponsored by Linden and Minsky will unjustly benefit from such association.

**106.**     Minsky's alleged acts of trademark infringement and unfair competition and misappropriation have been committed with the intent to cause confusion and mistake and to deceive.

**107.**     Minsky's actions, if not enjoined, will continue.  Linden has suffered, and continues to suffer, damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the SECOND LIFE and SL marks and injury to Linden's business.

**108.**    Linden is therefore entitled to injunctive relief and damages in an amount to be determined at trial, Minsky's profits, and the costs of this action.

## FIFTH COUNTERCLAIM
## CANCELLATION-INFRINGEMENT

**109.**    Linden incorporates by reference the allegations in Paragraphs 45 to 108 of this Counterclaim as though fully set forth herein.

**110.**    On March 18, 2008, the PTO issued United States Trademark Registration No. 3399258 for the mark SLART to Minsky.

**111.**    The registration was issued improperly in that the alleged mark SLART is merely a combination of Linden's mark SL with the generic term "art".  As such, the alleged SLART mark is an infringement of Linden's rights in SECOND LIFE and SL and is otherwise merely a generic term.

**112.**    Therefore, Minsky is not entitled to registration of SLART.

**113.**    Linden has been damaged and is likely to continue to be damaged by registration of the SLART mark.

**114.**    Accordingly, Linden is entitled to an order from this Court cancelling Minsky's registration.  With respect to this order, Linden requests certification to the Director of the PTO instructing the Director to make the appropriate entries upon the PTO's records.

## SIXTH COUNTERCLAIM
## CANCELLATION-FRAUD

**115.**    Linden incorporates by reference Paragraphs 45 to 114 of this Counterclaim as though fully set forth herein.

**116.**    On information and belief, at the time of filing for registration of SLART, Minsky was aware that Linden had rights in the marks SECOND LIFE and SL.

117.    On information and belief, at the time of filing Minsky was aware that relevant members of the public encountering his mark as used on or in connection with his services understood his mark to mean "SECOND LIFE art" or otherwise to refer to "art in SECOND LIFE."

118.    On information and belief, at the time of filing his response to the Office Action, Minsky was aware and knew that SLART refers to "SECOND LIFE art" and he misrepresented that fact to the PTO and misleadingly claimed that SLART "is a slang term, and not one that refers to art in Second Life."  In reliance on these material misrepresentations, the PTO issued a registration to Minsky for SLART.

119.    Linden has been damaged and is likely to continue to be damaged by registration of the SLART mark.

120.    Accordingly, Linden is entitled to an order from this Court cancelling Minsky's registration.  With respect to this order, Linden requests certification to the Director of the PTO instructing the Director to make the appropriate entries upon the PTO's records.

**SEVENTH COUNTERCLAIM
CANCELLATION – FRAUD**

121.    Linden incorporates by reference Paragraphs 45 to 120 of this Counterclaim as though fully set forth herein.

122.    On information and belief, at the time of filing the application for registration of SLART, Minsky was not using the mark SLART on or in connection with all of the services for which he claimed actual use in commerce under Section 1(a) of the Trademark Act.

123.    On information and belief, when Minsky filed the application and supporting declaration with the PTO and claimed that he was currently using the mark on or in connection with the services listed under Section 1(a), that sworn statement was false.

124.     On information and belief, at the time of filing the Statement of Use, Minsky was not using the mark SLART on or in connection with all the services listed in the application, which he represented were in use in the Statement of Use.

125.     On information and belief, Minsky misrepresented the nature of his use in commerce of the alleged mark at the time he submitted his Statement of Use and continued to prosecute the trademark application that led to the registration that is the subject of this dispute.

126.     On information and belief, the aforementioned false statements were material and were made with the intent to induce authorized agents of the PTO to grant registration of the SLART mark, and reasonably relying on the truth of said false statements, the PTO did, in fact, grant said registration to Minsky.

127.     Linden believes that it has been and will continue to be damaged by registration of the SLART mark.

128.     Accordingly, Linden is entitled to an order from this Court cancelling Minsky's registration.  With respect to this order, Linden requests certification to the Director of the PTO instructing the Director to make the appropriate entries upon the PTO's records.

## EIGHTH COUNTERCLAIM
## BREACH OF CONTRACT

129.     Linden incorporates by reference Paragraphs 45 to 128 of this Counterclaim as though fully set forth herein.

130.     Minsky registered as a user of Second Life, downloaded the Second Life software, and entered the Second Life virtual world.

131.     As a condition of his access, Minsky acknowledged and accepted the Second Life Terms of Service.

**132.** In addition, as those Terms of Service were periodically revised by Linden, and as a condition of his continued access to Linden's Second Life virtual world, Minsky acknowledged and accepted the revised Terms of Service. A true and correct copy of the current Second Life Terms of Service is attached hereto as Exhibit B.

**133.** By accepting the Terms of Service, Minsky entered into a valid and binding contract with Linden.

**134.** Minsky has violated the Terms of Service by, *inter alia*, violating Term of Service 4.4.

**135.** Linden has performed or is excused from performing the material obligations required of it under the Second Life Terms of Service.

**136.** Minsky's conduct, including without limitation, his violation of Term of Service 4.4, constitutes a material breach of the Terms of Service.

**137.** As a proximate result of Minsky's breach of contract, Linden is entitled to the relief requested herein.

## NINTH COUNTERCLAIM
## DECLARATORY RELIEF-TERMINATION OF CONTRACT

**138.** Linden incorporates by reference Paragraphs 45 to 137 of this Counterclaim as though fully set forth herein.

**139.** The actions of Minsky described above constitute a breach of the Second Life Terms of Service and entitle Linden to terminate Minsky's access to the SECOND LIFE online virtual world, as per the provisions of Term of Service 2.6.

**140.** On information and belief, Minsky disputes that he has violated the Second Life Terms of Service and that Linden is entitled to terminate his access.

**141.**     A real and justifiable controversy therefore exists as to Linden's right to terminate that access.

**142.**     Linden seeks a declaration from this Court that, as a result of Minsky's violation of the Second Life Terms of Service, Linden is within its rights to terminate Minsky's account according to its policies and procedures under its Terms of Service.

## PRAYER FOR RELIEF

WHEREFORE, Linden requests that judgment be entered as follows:

**143.**     That Minsky's Complaint be dismissed with prejudice;

**144.**     That the Director of the PTO be ordered to cancel Minsky's United States Trademark Registration No. 3399258 for the mark SLART and to make the appropriate entries upon the PTO's records reflecting the cancellation;

**145.**     That Minsky, his attorneys and representatives and all of those in privity with or acting under his direction and/or pursuant to his control, be preliminarily and permanently enjoined and restrained, from directly or indirectly:

    (a)    Using the mark SLART, or terms, marks, symbols or indicia confusingly similar to the SLART, SECOND LIFE and SL marks, in connection with the production, advertisement, promotion, distribution, offering for sale or selling of services related to art.

    (b)    Performing any acts or using any service marks, trademarks, names, words or phrases that are likely to cause confusion, to cause mistake, to deceive or otherwise mislead the public into believing that the services or goods of Defendant originate with, or are affiliated with, associated with, or sponsored by Linden;

**146.**     That Minsky be required to file with the Court, and serve on Linden, a statement under oath evidencing compliance with any preliminary or permanent injunctive relief ordered by the Court within fourteen (14) days after the entry of such order of injunctive relief;

**147.**     That Minsky, his attorneys and representatives and all of those in privity with or acting under its direction and/or pursuant to its control, be required to deliver up for destruction all advertising, signs, labels, wrappers, packaging, and any other materials bearing the SLART mark;

**148.**     That the Court issue a declaration that Linden is within its rights under the Terms of Service to terminate Minsky's Second Life account.

**149.**     That Minsky be ordered to pay Linden monetary damages for the harm resulting from his infringement and dilution of Linden's marks, as described above, in an amount to be determined at trial;

**150.**     That damages be trebled and that Minsky be ordered to pay Linden's attorneys' fees on the basis that this is an exceptional case;

**151.**     That Linden have such other and further relief as this Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

**152.**    Linden demands a trial by jury of all issues so triable.

Dated:  October 10, 2008

Respectfully Submitted,

COOLEY GODWARD KRONISH

_s_/ Janet L. Cullum

*By:*  **Janet L. Cullum**

*Admitted pro hac vice*
Assigned Bar Roll No. 106604

1114 Avenue of Americas
New York, New York 10036-7798
Tel:  (212) 479-6500
Fax: (212) 479-6275
email:  cullumjl@cooley.com

**Andrew C. Rose** (102473)
NIXON PEABODY LLP
677 Broadway, 10th Floor
Albany, New York  12207
Tel:  (518)427-2650

*ATTORNEYS FOR DEFENDANT
LINDEN RESEARCH, INC.*